## HAMILTON *v.* HOME INSURANCE COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF OHIO.

No. 98.  Argued December 1, 2, 1890. — Decided December 15, 1890.

A provision in a policy of fire insurance, that " in case differences shall arise touching any loss or damage, after proof thereof has been received in due form, the matter shall, at the written request of either party, be submitted to impartial arbitrators, whose award in writing shall be binding on the parties as to the amount of such loss or damage, but shall not decide the liability of the company under this policy," cannot be pleaded in bar of an action on the policy, unless the policy further provides that no such action shall be brought until after an award.

THIS was an action, brought June 26, 1886, upon a policy of insurance, numbered 3190, by which the Home Insurance Company of New York insured Robert Hamilton for one year from February 23, 1886, on a stock of tobacco in his warehouse at 413 and 415 Madison Street in Covington in the State of Kentucky, against loss or damage by fire to the amount of $5000, " to be paid sixty days after due notice and proofs of the same shall have been made by the assured and received at the office of the company in New York."

The policy, after providing that in case of loss the assured should forthwith give notice, and as soon afterwards as possible furnish proofs of loss, with a magistrate's certificate, submit to examination on oath, and produce books and vouchers,

and copies of lost books and invoices, further provided, among other things, as follows:

"When personal property is damaged, the assured shall forthwith cause it to be put in order, assorting and arranging the various articles according to their kinds, separating the damaged from the undamaged, and shall cause an inventory to be made and furnished to the company of the whole, naming the quantity, quality and cost of each article. The amount of sound value and of damage shall then be ascertained by appraisal of each article by competent persons (not interested in the loss as creditors or otherwise, nor related to the assured or sufferers) to be mutually appointed by the assured and the company, their report in writing to be made under oath before any magistrate or other properly commissioned person, one-half of the appraiser's fees to be paid by the assured. The company reserves the right to take the whole or any part of the articles at their appraised value; and until such proofs, declarations and certificates are produced, and examinations and appraisals permitted by the claimant, the loss shall not be payable."

"But provided, in case differences shall arise touching any loss or damage, after proof thereof has been received in due form, the matter shall, at the written request of either party, be submitted to impartial arbitrators, whose award in writing shall be binding on the parties as to the amount of such loss or damage, but shall not decide the liability of the company under this policy."

"And it is hereby understood and agreed by and between this company and the assured that this policy is made and accepted in reference to the foregoing terms and conditions, and to the classes of hazards and memoranda printed on the back of this policy, which are hereby declared to be a part of this contract, and are to be used and resorted to in order to determine the rights and obligations of the parties hereto in all cases not herein otherwise specially provided for in writing."

The answer admitted the execution of the policy, and notice of loss; put in issue the amount of loss; denied that the plain-

tiff ever delivered due proofs of loss, or had performed the conditions of the policy on his part; and, after reciting the substance of the provisions above quoted, alleged as follows:

"And the defendant says that differences having arisen touching the loss and damage sustained by said plaintiff under said policy and the amount thereof, the plaintiff claiming a loss of $40,000, and the defendant claiming and believing that it was slight and but a very small part of said sum, and being unable to agree upon the amount of said loss, this defendant requested and demanded in writing that the amount of such loss and damage should be submitted to and ascertained and determined by impartial arbitrators, whose award in writing should be binding upon the parties as to the amount of loss or damage, but should not decide the liability of the company under said policy.

"And the said defendant further says that the plaintiff wholly disregarded the terms and conditions of said policy in that respect, and neglected and refused to have such arbitration, and refused to choose or submit to arbitrators chosen in accordance with the terms and provisions of said policy the amount of the loss or damage by fire to the property covered by said policy, and refused to be governed in the ascertainment of said loss by any of the terms and conditions of said policy, and, against the protest of the defendant, proceeded to and did sell all of said property at auction. An arbitration and the ascertainment of the said loss thereby, as provided in said policy, became impossible, and this defendant was deprived of its rights and privileges under said policy with respect to said property and the appraisement thereof.

"This defendant further says that the damage done to the property insured was of such a nature as to require a careful and scrutinizing examination to ascertain the injury thereto and loss thereon, and that an appraisement by arbitrators, as required by the terms and conditions of said policy, was of the greatest importance to the defendant, and the only means under said policy whereby the exact amount of damage and injury sustained by said plaintiff upon said property could be determined; and the said plaintiff, by the sale of said prop-

erty, and in disregarding the terms and conditions of said policy in that respect, wholly deprived this defendant of the right to an arbitration, as provided in said policy, and all other rights in respect to the property so injured or damaged by said fire.

· " The defendant further says that by reason of the failure and refusal of said plaintiff to agree upon arbitrators to determine the amount of the loss and damage so sustained as aforesaid, and his refusal to submit the amount of such loss to arbitration in accordance with the plain terms and provisions of said policy, and the sale of said property so injured as aforesaid against the written protest of the defendant, the said plaintiff is not entitled to recover in this action, nor to have or maintain this action against the said defendant."

The plaintiff filed a replication, denying these allegations of the answer.

At the trial, the plaintiff introduced evidence tending to prove a loss or damage by fire on April 16, 1886, to the amount of the insurance, and the delivery of proofs of loss in accordance with the policy, and put in evidence a policy of the Liverpool, London and Globe Insurance Company on the same property; the defendant introduced evidence tending to prove that the amount of loss or damage was less; and there was put in evidence a correspondence in writing between the parties or their authorized agents at Cincinnati, the material parts of which were as follows:

April 26, 1886. Plaintiff to defendant. " I enclose proof of loss under policy of your company, with invoice attached, in compliance with the requirements of the policy. If there is anything defective in the substance or form of the above proof, please advise me thereof at once that I may perfect the same to your satisfaction, and return the proof to me in such case for that purpose. The property described and damaged has been invoiced and arranged, and is ready for examination by your company. Such examination must be made at once, for the reason that I am obliged to occupy the premises in the prosecution of my business, and each day of delay involves considerable loss and expense to me. As before advised, I

propose to send the entire stock to be sold at public auction in a few days, whereof I will give you notice. It can be readily inspected in a short time where it now lies."

April 27, 1886. Defendant to plaintiff. " Received of Robert Hamilton papers purporting to be proofs of loss under Home Insurance policy No. 3190."

April 28, 1886. Defendant and other insurance companies to plaintiff. " The undersigned, representing the several insurance companies against which you have made claim for loss under their respective policies of insurance upon stock in your tobacco factory, Nos. 413 and 415 Madison street, Covington, Ky., claimed to have been damaged by fire on April 16, 1886, beg leave jointly to take exception to the amount of claim made, and to demand that the question of the value of and the loss upon the stock be submitted to competent and disinterested persons, chosen as provided for in the several policies of insurance under which claim is made; and we hereby announce our readiness to proceed at once with this appraisement, so soon as your agreement to the demand is declared. We further desire jointly to protest against the removal, sale or other disposition of the property until such an appraisement has been had, and to notify you that the insuring companies will in no way be bound by such *ex parte* action."

April 29, 1886. Plaintiff's counsel to defendant and other insurance companies. " Mr. Hamilton is not endeavoring to obtain any unfair advantage or unfair adjustment of his loss against the companies. He had believed that, in view of the fact that the traffic in tobacco is so large in this city, and substantially all of it, at least ninety-nine per cent of the leaf tobacco business, is transacted by sale at public auction, that a sale of this tobacco presented the fairest mode of ascertaining its actual value as it stands. It is in substance and effect an appraisement in detail of every package by the entire trade in this city. But in view of the fact that the insurers seem to demand arbitration by arbitrators, and that you propose to select a competent person, which we understand to mean a man acquainted with the manufacture of tobacco, to act as arbitrator in your behalf, Mr. Hamilton will accede to your

proposition, upon the express understanding that the arbitrators selected shall have a full opportunity to examine the stock of tobacco, and that it shall then be sold at public auction, in order that its value thus ascertained, together with such other evidence as either party may desire to offer, may be presented to the arbitrators before they make their award."

"If the proposed arbitration is satisfactory, will you at once inform me of the arbitrator selected by you and submit to me the form of agreement for arbitration which you propose? Mr. Hamilton will do the like in respect to the arbitrator selected by him."

April 30, 1886.   Defendant and other insurance companies to plaintiff's counsel.   "We must insist upon arbitration, in accordance with the terms of our several contracts, without importing into it any conditions as to the sale of the property. Such conditions would be incompatible with the provisions of our several policies of insurance and the rights of the insuring companies thereunder.   As soon as Mr. Hamilton indicates his readiness to proceed with the arbitration called for, we will submit the name of an arbitrator, and also a form of agreement for arbitration."

April 30, 1886.   Plaintiff's counsel to insurance companies. "Mr. Hamilton, and I in his behalf, deny that the arbitration in the manner indicated is in violation of the terms of any of the policies, or imports any condition into it which the insured is not entitled to insist upon, or which is incompatible with the provisions of the several policies of insurance, or the rights of the insurance companies thereunder.   Mr. Hamilton is ready, and has directed to me to express his readiness, to proceed at once with an arbitration which, as he understands it, is in substantial compliance with the arbitration provided for in all the several policies; but they are not alike in their provisions upon this subject of arbitration, and a literal compliance with some of them would be inconsistent with a literal compliance with others.   The only way, as it seems to me, that Mr. Hamilton, or I in his behalf, can determine whether what you call the 'arbitration called for' is what Mr. Hamilton understands to be the 'arbitration called for' and is will-

·ing to accede to, is for you to indicate what you understand the arbitration called for to be, by submitting a form of agreement for arbitration, or in some other mode indicating the specific terms of the arbitration which you have demanded. I wish to say that, as I understand the expression in my letter of the 29th, that 'it' (the tobacco) 'shall then be sold at public auction, in order that its value thus ascertained, together with such other evidence as either party may desire to offer, may be presented to the arbitrators before they may make their award,' does not in any wise call upon the companies to consent to a sale of the property. Mr. Hamilton is quite ready to take upon himself the responsibility of selling it. It simply requires that the arbitration shall be commenced before the sale, when the arbitrators may have an opportunity of examining the property, and that the award shall not be made until after the sale has taken place, and the assured has had an opportunity to submit the result of it, with other competent evidence, to the arbitrators before the award is made."

May 3, 1886. Insurance companies to plaintiff's counsel. "In compliance with the request in your letter of April 30th, addressed to the companies insuring Robert Hamilton, we herewith enclose a form of agreement for 'submission to appraisers,' which is in practical accordance with the conditions of the policies of the several companies, and which all the companies are willing to sign and abide by the award reached thereunder. We must again decline to entertain your proposition that the arbitrators, after examining the stock, shall postpone their award until after the stock shall have been sold, when the result of such sale, with other evidence, shall be submitted to the arbitrators. We insist that the arbitration provided for in such case by our policies is in no sense a court for the hearing of evidence. The appraisers may, in their discretion, seek any evidence they deem necessary for their own full information and the forming of their own judgments as to the value and damage of the goods. But we insist that under the conditions of the several policies there can be no abandonment of the stock to the companies, and that after an award has been reached the companies have the right to take the stock,

in whole or in part, at the appraised value. The companies propose to stand upon the conditions of their policies, and decline all propositions looking to a waiver thereof, or adding new and inconsistent conditions thereto."

The principal part of the form of "submission to appraisers," enclosed in this letter, was as follows: "It is hereby agreed* by Robert Hamilton, of the first part, and the several insurance companies, by their representatives, whose names are hereunto affixed, of the second part, that —— —— and —— —— shall appraise and estimate the loss by fire of April 16, 1886, upon the property of Robert Hamilton, as specified below and as hereinafter provided. In case of disagreement, said appraisers shall select a third, who shall act with them in matters of difference only. The award of said appraisers or any two of them, made in writing in accordance with this agreement, pursuant to the terms of the policies, shall be binding upon both parties; but it is understood that this agreement and appraisement are only for the purpose of fixing the sound value of the property immediately before the fire and the loss or damage thereon occasioned by said fire, and shall not waive, invalidate or terminate the right of the insurers to take said property at its appraised value, or any other rights of either party hereto, but the same are to be construed solely by reference to said policies."

May 4, 1886. Plaintiff's counsel to insurance companies. "There can be no misunderstanding as to the position taken by the companies and the assured in this matter. 1st. I understand the companies demand that appraisers be selected by the companies and the assured, who shall estimate the loss by their own judgment and without hearing the testimony of witnesses who may be called by either party, and that the parties shall be bound by their report or award as to the amount of the loss thus made. This Mr. Hamilton declines to do. 2d. Mr. Hamilton is willing that the companies jointly, or as they may arrange between themselves, shall make their own appraisement through their own appraisers of the value of the stock, and that they shall jointly, or either of them, with the consent of the rest, have the right to take the stock,

in whole or in part, at their appraisal. 3d. Mr. Hamilton has made and makes no claim to abandon the property, and he has made and makes no claim that the companies shall consent to the sale by him of the damaged stock."

Enclosed in this letter, and signed by the plaintiff's counsel, was the following: "To the Liverpool and London and Globe Insurance Company and the companies jointly acting with it in respect to the loss sustained by Robert Hamilton on the property in Nos. 413 and 415 Madison street, Covington, Ky. Mr. Hamilton demands of the several insurance companies an arbitration of the amount of the loss sustained upon the goods covered by fire on the 16th day of April, and will select an arbitrator to represent him in pursuance of the provisions of the policy, it being stipulated in the agreement for arbitration that the several companies and the assured shall be duly notified of the time of the hearing by the arbitrators, and that the arbitrators shall hear all competent legal testimony that may be offered by either party, as well as personally examine the damaged goods, in considering and awarding the amount of the loss."

May 5, 1886. Insurance companies to plaintiff's counsel. "Your communication of the 4th is at hand. We have nothing to add to our letter of the 3d; and if, as we are made to understand, Mr. Hamilton declines to consent to a form of 'submission to appraisers' that does not provide for the introduction of 'all competent legal testimony that may be offered by either party' (under which provision, as you have repeatedly declared, Mr. Hamilton would seek to present evidence based on a sale of the property,) we must accept your communication as a refusal to comply with our request and with the conditions of the policies of insurance, which are clearly incompatible with your wishes in the matter."

May 7, 1886. Insurance companies to plaintiff's counsel: "Referring to your letter of the 4th, setting forth your understanding of the position taken by the two parties, permit me, on behalf of the companies, to take exceptions to your first statement, to wit: 'I understand the companies demand that appraisers be selected by the companies and the assured, who

shall estimate the loss by their own judgment and without hearing the testimony of witnesses who may be called by either party, and that the parties shall be bound by their report or award as to the amount of the loss thus made.' This does not correctly state our position, which remains now as stated in our communication of the 3d, to wit: 'The appraisers may, at their discretion, seek any evidence they deem necessary for their own full information.' What we do object to and protest against is the sale of the goods, or the consideration by the appraisers of evidence founded on that fact or result. If the form of 'submission to appraisers' we submitted contains any provision or condition limiting or defining the duties of the appraisers and not prescribed by the several policies, each company will submit its own form, as we desire and demand a submission free from any conditions imposed by either party."

The plaintiff also gave in evidence a letter from his counsel to the Liverpool, London and Globe Insurance Company, dated May 20, 1886, enclosing a notice in a newspaper of the day before of a sale by auction to be had on May 29, 1886, at the plaintiff's warehouse in Covington, of the tobacco insured by the policy in suit.

Upon this evidence, the court instructed the jury that, on the issues joined on the special defences in the answer, the plaintiff could not recover, and that they should return a verdict for the defendant. The plaintiff tendered a bill of exceptions to these instructions, and, after verdict and judgment for the defendant, sued out this writ of error.

*Mr. Joseph Wilby* and *Mr. E. W. Kittredge* for plaintiff in error.

*Mr. Channing Richards* for defendant in error. *Mr. Thomas B. Paxton* and *Mr. Charles H. Stephens* were with him on the brief.

The correspondence in the record discloses that the defendant requested that the amount of loss or damage should be

submitted to appraisers in accordance with the terms of the policy, and that the plaintiff refused to do so unless the defendant would consent in advance to define the legal powers and duties of the appraisers or arbitrators, which (as the court held in *Hamilton* v. *Liverpool, London & Globe Ins. Co.*, 136 U. S. 242), defendant was under no obligation to do. And it likewise discloses the determination of the assured to dispose of the property, at public sale, regardless of the Company's rights under the policy, so that the result of such forced sale might be used as evidence of the extent of his loss; and that he was determined not to submit to an appraisal or arbitration except on terms that would admit of such a course. This, the court held in the case against the Liverpool and London and Globe Insurance Company, was in effect a refusal by plaintiff to permit an appraisal in accordance with the terms of the policy, and fatal to his action.

An effort is made here, as was done below, to distinguish the policies in the two cases, and to claim that the determination of the amount of loss or damage as provided in the policy of the defendant company is not made a condition precedent to recovery, as it was in the policy of the Liverpool and London and Globe Insurance Company.

It is true that the express provision in the policy of the Liverpool and London and Globe Company, that no action should be sustainable against the company upon the policy until after an award had been obtained fixing the amount of the claim as provided in the policy, is not found in this policy; but we submit, that upon a fair construction of the contract it is none the less a condition precedent to recovery in this case.

In the case of *Scott* v. *Avery*, 5 H. L. Cas. 811, which is the leading case in support of such conditions, the Lord Chancellor says that it is a question of construction whether by the terms of the contract any right of action exists until the amount of damage has been ascertained in a specified mode; and if the meaning of the parties was that the amount to be recovered should only be such a sum as should be determined by arbitration, in case of disagreement, then such ascertainment of the amount is a condition precedent to recovery. And he adds, if

that was their meaning, the circumstance that they have not stated that meaning in the clearest terms, or in the most artistic form, is a matter utterly unimportant.

In that case, it is true there was an express provision that no action should be brought until the amount of the loss had been determined by arbitration — being substantially the same language as that contained in the policy of the Liverpool and London and Globe Insurance Company : but there was no such provision in the policies involved in *Elliott* v. *Royal Exchange Ins. Co.*, L. R. 2 Ex. 237, and *Braunstein* v. *Accidental Death Co.*, 1 B. & S. 782; in both of which the decision of *Scott* v. *Avery* was followed.

In several American cases also the policies did not expressly provide that no suit should be brought until ascertainment of the amount of loss or damage; yet an appraisal or arbitration was held to be a condition precedent to recovery. *Hall* v. *Norfolk Fire Ins. Co.*, 57 Connecticut, 105, 114 ; *Saucelito Dry Dock Co.* v. *Commercial Union Assurance Co.*, 66 California, 253. In the latter case the policy was almost identical with the policy of the Royal Exchange Company. In *Holmes* v. *Richet*, 56 California, 307, and also in *Delaware & Hudson Canal Co.* v. *Pennsylvania Coal Co.*, 50 N. Y. 250, *Scott* v. *Avery* was followed, and held to be decisive.

In some cases, several of which are cited in the brief filed on behalf of the plaintiff in error, it has been held that the mere provision in policies of insurance for an appraisement or arbitration was an independent covenant, and did not constitute a condition precedent to recovery upon the policy, but it was recognized as a question of the proper construction of each policy; and in every such case the policy differed materially from the policy of the defendant company involved in this case.

Thus, in *Reed* v. *Washington Insurance Co.*, 138 Mass. 572, the court held it to be a question of construction whether an appraisal of value, or an award of the amount of damages, is a condition precedent to a right of action, and distinguished the policy under consideration in that case from those involved in *Scott* v. *Avery*, *Elliott* v. *The Royal Exchange Co.*, *Braunstein* v. *The Accidental Death Co.*, and other cases, finding

that the agreement for arbitration was distinct from the promise to pay the loss, and from the provision for a statement by the assured, which was a condition of the promise.

The policy of the defendant company expressly stipulates that it is made and accepted in reference to certain terms and conditions, which are declared to be a part of the contract, and are to be used and resorted to in order to determine the rights and *obligations* of the parties in all cases not otherwise specially provided for in writing. One of these conditions provides for the submission of differences touching any loss or damage to arbitration, and makes the award binding on the parties. Such language is alone sufficient, under the rules of construction applied in the various cases already cited, to make it incumbent on the plaintiff to show that the amount of his loss or damage has been thus determined, or that the failure has been through no fault of his.

As no action can be maintained until the loss is payable, an appraisal is made a condition precedent to an action as clearly as by the language employed in the policy of the Liverpool, London and Globe Company, and much more clearly than in the other policies and contracts involved in the cases above referred to. In this it resembles the policy involved in *Scottish Union Ins. Company* v. *Clancey*, 71 Texas, 5, which provided that loss or damage, unless the amount was agreed on, should be appraised by disinterested and competent persons, and the award of any two in writing should be binding and conclusive as to the amount; that the report of the appraisers in writing, under oath, should form a part of the proofs of loss; and that until such proofs were produced and an appraisal permitted, the loss sustained should not be payable. The court held that, in the absence of fraud, accident or mistake, the parties having agreed that the amount of loss should be determined in a particular way, such stipulation was valid; and as the contract required that the report of the appraisement of the loss should be made a part of the proofs of loss, and that the loss should not be payable until after such proofs were furnished, that such appraisement and proofs of loss were conditions precedent to right of action by the assured.

MR. JUSTICE GRAY, after stating the case as above, delivered the opinion of the court.

This case resembles in some aspects that of *Hamilton* v. *Liverpool, London & Globe Ins. Co.*, 136 U. S. 242, decided at the last term, but it is essentially different in important and controlling elements.

In that case, the effect of the provisions of the policy, by reason of which it was held that the assured, having refused to submit to the appraisal and award provided for, could not maintain his action, was thus stated by the court: "The conditions of the policy in suit clearly and unequivocally manifest the intention and agreement of the parties to the contract of insurance that any difference arising between them as to the amount of loss or damage of the property insured shall be submitted, at the request in writing of either party, to the appraisal of competent and impartial persons, to be chosen as therein provided, whose award shall be conclusive as to the amount of such loss or damage only, and shall not determine the question of the liability of the company; that the company shall have the right to take the whole or any part of the property at its appraised value so ascertained; and that until such an appraisal shall have been permitted, and such an award obtained, the loss shall not be payable, and no action shall lie against the company. The appraisal, when requested in writing by either party, is distinctly made a condition precedent to the payment of any loss, and to the maintenance of any action." 136 U. S. 254, 255.

That policy looked to a single appraisal and award, to be made as one thing and by one board of appraisers or arbitrators, whenever any difference should arise between the parties, and to be binding and conclusive as to the amount of the loss, although not to determine the question of the liability of the company; and the policy contained, not only a provision that until such an appraisal the loss should not be payable, but an express condition that no action upon the policy should be sustainable in any court until after such an award.

In the case now before us, on the other hand, the appraisal

and the award are distinct things, and to take place at separate times, and the effect assigned to each is quite different from that given to the appraisal and award in the other policy. The "appraisal," without which the loss is not payable, is required to be made, not merely when differences arise as to its amount, but in all cases, and results in a mere "report in writing," which is not declared to be binding upon the parties in any respect, and is in truth but a part of the proofs of loss. It is only by a separate and independent provision, and when differences arise touching any loss "after proof thereof has been received in due form," that the matter is required, at the request of either party, to be submitted to "arbitrators, whose award in writing shall be binding on the parties as to the amount of such loss, but shall not decide the liability of this company under the policy;" and there is no provision whatever postponing the right to sue until after an award.

The special defences set up, with some tautology and surplusage, in the answer, reduce themselves, when scrutinized, to a single one, the plaintiff's refusal to submit to an award of arbitrators, as provided in the policy. This appears by the general frame of the answer, and by its speaking of the award as "an arbitration and the ascertainment of the said loss thereby" and as "an appraisement by arbitrators," as well as by the distinct averments that the defendant requested and the plaintiff declined a submission to arbitration, and by the omission of any specific allegation that the plaintiff neglected to procure a report of appraisers.

The evidence introduced at the trial was to the same effect. Proofs of loss, sent by the plaintiff to the defendant, with a request that any defects in substance or form might be pointed out so that he might perfect the proofs to the defendant's satisfaction, were received by the defendant, without then or afterwards objecting to their form or sufficiency. The subsequent correspondence between the parties was evidently influenced in form by embracing insurances in different companies under policies with various provisions; but, as applied to the policy in suit, it manifestly related, and was understood by both parties to relate, not to a mere report of appraisers,

but to an award of arbitrators which should bind both parties as to the amount of the loss.

The instruction to the jury, therefore, that on the issues joined on the special defences in the answer, and upon the evidence in the case, the plaintiff could not recover, was in effect a ruling that the plaintiff could not maintain his action because he had refused to submit the amount of his loss to arbitration.

A provision, in a contract for the payment of money upon a contingency, that the amount to be paid shall be submitted to arbitrators, whose award shall be final as to that amount, but shall not determine the general question of liability, is undoubtedly valid. If the contract further provides that no action upon it shall be maintained until after such an award, then, as was adjudged in *Hamilton* v. *Liverpool, London & Globe Ins. Co.*, above cited, and in many cases therein referred to, the award is a condition precedent to the right of action. But when no such condition is expressed in the contract, or necessarily to be implied from its terms, it is equally well settled that the agreement for submitting the amount to arbitration is collateral and independent; and that a breach of this agreement, while it will support a separate action, cannot be pleaded in bar to an action on the principal contract. *Roper* v. *Lendon*, 1 El. & El. 825; *Collins* v. *Locke*, 4 App. Cas. 674; *Dawson* v. *Fitzgerald*, 1 Ex. D. 257; *Reed* v. *Washington Ins. Co.*, 138 Mass. 572; *Seward* v. *Rochester*, 109 N. Y. 164; *Birmingham Ins. Co.* v. *Pulver*, 126 Illinois, 329, 338; *Crossley* v. *Connecticut Ins. Co.*, 27 Fed. Rep. 30.

The rule of law upon the subject was well stated in *Dawson* v. *Fitzgerald*, by Sir George Jessel, Master of the Rolls, who said : " There are two cases where such a plea as the present is successful: first, where the action can only be brought for the sum named by the arbitrator ; secondly, where it is agreed that no action shall be brought till there has been an arbitration, or that arbitration shall be a condition precedent to the right of action. In all other cases where there is, first, a covenant to pay, and, secondly, a covenant to refer, the covenants are distinct and collateral, and the plaintiff may sue

on the first, leaving the defendant" "to bring an action for not referring," or (under a modern English statute) "to stay the action till there has been an arbitration." 1 Ex. D. 260.

Applying this test, it is quite clear that the separate and independent provision, in the policy now before us, for submitting to arbitration the amount of the loss, is a distinct and collateral agreement, and was wrongly held by the Circuit Court to bar this action.

*Judgment reversed, and case remanded, with directions to set aside the verdict, and to take such further proceedings as may be consistent with this opinion.*