### CONNECTICUT FIRE INS. CO. OF HARTFORD v. HAMILTON.

(Circuit Court of Appeals, Sixth Circuit. November 6, 1893.)

#### No. 4.

1. INSURANCE—DEMAND FOR APPRAISAL.

A joint demand for a joint appraisal by twelve insurance companies is not within the terms of the policy of one of the companies, providing for an appraisal by two persons, one to be selected by the company, and the other by the insured, who, in case of disagreement, were to call in a third. Such policy stipulates for a separate appraisal.

2. SAME—PROOFS OF LOSS—WAIVER.

A policy of fire insurance provided that a loss should be paid 60 days after notice and proofs; that the amount should be appraised in a certain manner, and the appraisers' report should be made part of the proofs of loss; and until such proofs should be produced and appraisals permitted the loss should not be payable. Proofs of loss were furnished by the insured, to which the insurer objected because of the amount claimed. After negotiations between the parties concerning the manner of appraisal, the insurer promised to submit a form of appraisal, which it failed to do, but retained the proofs for over 60 days. *Held*, that the insurer could not afterwards object to the sufficiency of the proofs. Severens, District Judge, dissenting. 46 Fed. 42, affirmed.

3. SAME—APPRAISAL.

When it is stipulated in a fire insurance policy that, in case the amount of loss shall not be agreed upon by the parties, it shall be determined by appraisers chosen by them, and that their appraisal shall form a part of the proofs of loss, until the production of which the loss shall not be payable, it is the duty of the insured, in case of disagreement, and the stipulation is not waived by the insurer, to obtain such an appraisal, and no right of action arises until he has obtained it, or made reasonable effort to do so and failed. Per Severens, District Judge.

4. SAME—SALE PENDING APPRAISAL.

If, in such a case as is last supposed, the policy gives the insurer the right within 60 days after the reception of such proofs of loss to take the damaged property at the appraisal value, the insured has no right, while negotiations for an appraisal are pending, and while only 33 days from the transmission of the original proofs of loss have elapsed, to sell in parcels and dispose of the damaged property; and if he does so he cannot maintain his action on the policy. Per Severens, District Judge.

In Error to the Circuit Court of the United States for the Western Division of the Southern District of Ohio.

At Law. Action by Robert Hamilton against the Connecticut Fire Insurance Company of Hartford on a fire insurance policy. Upon suggestion of the death of the plaintiff, Cora B. Hamilton and John W. Bryant, his executors, were substituted in his place and

stead. A verdict was directed for plaintiffs, (46 Fed. 42,) and judgment for plaintiffs was entered thereon. Defendant brings error. Affirmed on reargument.

Thomas A. Logan, for plaintiff in error.
Joseph Wilby, for defendants in error.

Before TAFT, Circuit Judge, and SEVERENS and SWAN, District Judges.

SEVERENS, District Judge. Robert Hamilton brought his suit in the circuit court for the southern district of Ohio to recover upon a policy of insurance issued by the plaintiff in error, for a loss sustained by him in consequence of fire, occurring on the 16th of April, 1886, in a warehouse at Covington, Ky., whereby his stock of tobacco there stored was damaged. This stock was insured also by 11 other companies. The policy of the Connecticut Fire Insurance Company contained this stipulation:

"Loss or damage to property partially or totally destroyed, unless the amount of said loss or damage is agreed upon between the assured and the company, shall be appraised by disinterested and competent persons, one to be selected by the company and one by the assured; and, when either party demand it, the two so chosen may select an umpire to act with them in case of disagreement, and if the appraisers fail to agree they shall refer the difference to such umpire, each party to pay their own appraiser and one-half the umpire's fee; and the award of any two in writing shall be binding and conclusive as to the amount of such loss or damage, but no appraisal or agreement for appraisal shall be construed under any circumstances as evidence of the validity of said policy, or of the company's liability thereon. When personal property is damaged, the assured shall put it in best order possible, and make an inventory thereof, naming the quantity and cost of each article; and upon each article the damage shall be separately appraised,—if a building, by an estimate in detail; and the report of the appraisers in writing under oath shall form a part of the proof hereby required, and until such proofs and certificates are produced and examinations and appraisals permitted the loss shall not be payable."

—And there was a reservation of a right to the company to take any of the damaged property at the appraised value, or to repair or replace property damaged or lost, upon giving notice of their intention so to do within 60 days after the receipt of the proof therein required. It was also stipulated in a previous part of the policy that the loss was "to be paid to the assured sixty days after due notice and satisfactory proofs of the same are made by the assured and received at their office in Chicago, in accordance with the terms of this policy hereinafter mentioned."

It is not questioned that the insured property was damaged by the fire, or that the loss was within the terms of the policy. The defense is founded upon the provisions of the policy above set forth. It is alleged that the proofs of loss required by the contract had not been furnished; and it is alleged that the insurance company, not agreeing to the amount of the loss as claimed by the insured in his preliminary proofs, seasonably demanded that the same be determined by the award of appraisers to be chosen by the parties, pursuant to the stipulation in the policy, and that this demand was refused by the insured, who also sold, against the protests of the com-

pany, the damaged stock in small lots, and suffered the same to be scattered, thereby depriving the company of the right to take the property at its appraised value. And it is insisted that in these respects the insured has failed to perform conditions precedent to his right of recovery. To this the plaintiff (in the court below) replies that no such demand for appraisal was made by the company as is contemplated by that provision in the policy.

The case is one of several instituted against various companies who had issued policies on the same stock in force at the time of the fire. Two of these, involving the construction and validity of differing provisions in the policies relative to the right of the parties to demand an appraisal and award, one or both, of disputed demands and other matters, have already been decided and disposed of by the supreme court. Hamilton v. Liverpool, L. & G. Ins. Co., 136 U. S. 242, 10 Sup. Ct. 945; Hamilton v. Home Ins. Co., 137 U. S. 370, 11 Sup. Ct. 133. In the first of these the clause in the policy of that insurance company upon that subject was held to establish a condition precedent, without performance of which, upon the request of the company, the plaintiff could not recover. In the other case, however, it was held that the clause relating to that subject in that company's policy did not require the appraisal and award as a condition to the right of action, but constituted a collateral term in the contract, upon which an independent suit could be brought upon a violation thereof. The present case seems to have been tried upon the assumption by both parties that the provision in the policy brought it within the decision in Hamilton v. Liverpool, London & Globe Insurance Company, into that class of cases where the stipulation makes the appraisal or award a condition precedent.

On the 26th of April,—10 days after the fire,—Hamilton, the insured, transmitted to the Connecticut Fire Insurance Company preliminary proofs of loss, which were not otherwise objected to by the company than is expressed or implied in the correspondence which presently followed between that company and the several other insurance companies acting in concert with it on the one hand, and Hamilton on the other, indicating a disagreement with the insured about the amount of loss or damage, and a demand for its determination by appraisers. All other objections to the proofs, if there were any, were waived by the failure to bring them forward. But I think that the letter of the 28th of April, hereinafter quoted, ought to be regarded as tantamount to an objection on the part of the company to the sufficiency of the proofs of loss in respect to the amount of damages claimed. And this brings us to the consideration of the main points in controversy, which are: First, whether the company made such a demand for an appraisal and award as the policy authorized it to make; and, second, if it did not, whether the insured was himself bound to take action for the procuring of an appraisal to supply the deficiency in his proofs of loss as a condition to his right to recover. If this last question is decided in the affirmative, the further inquiry is presented whether he sufficiently discharged his obligation in that behalf, or was he excused therefrom by the conduct of the company?

The reception of the proofs of loss was acknowledged by this insurance company's agent on the 27th April, 1886, with the statement that he would forward them to the proper authorities at once; and on the following day the correspondence above referred to between the insurance companies acting in concert with the insured was begun by the following letter of the company:

"Cincinnati, O., April 28, 1886.

"Robert Hamilton, Esq., Covington, Ky.—Dear Sir: The undersigned, representing the several insurance companies against which you have made claim for loss under their respective policies of insurance upon your stock in your tobacco factory, Nos. 413 and 415 Madison Ave., Covington, Ky., claimed to have been damaged by fire on April 16, 1886, beg leave jointly to take exception to the amount of claim made, and to demand that the question of the value of and the loss upon the stock be submitted to competent and disinterested persons, chosen as provided for in the several policies of insurance under which claim is made; and we hereby announce our readiness to proceed at once with this appraisement, so soon as your agreement to the demand is declared. We further desire jointly to protest against the removal, sale, or other disposition of the property until such an appraisement has been had, and to notify you that the insuring companies will in no way be bound by such ex parte action. You may address your reply to the joint demand made above in care of the London and Liverpool and Globe Insurance Company, Third and Main streets, Cincinnati. Waiving none of the rights of the several companies under the terms of their respective policies, we are,

"Very respectfully yours."

[Signed by the agents of 11 insurance companies, of which the plaintiff in error was one.]

To this Mr. Hamilton's attorney replied on the 29th of April, in substance, that he would accede to an arbitration if the person whom the company would select should be acquainted with the manufacture of tobacco, and upon the express understanding that the arbitrators should have full opportunity to examine the stock of tobacco, and that it should then be sold at public auction, in order that the value thus ascertained, with such other evidence as the parties desired, might be presented to the arbitrators. The letter further stated that the interests of Mr. Hamilton required a speedy sale of the tobacco. A lengthy correspondence upon the subject between the companies and the attorney for Mr. Hamilton ensued. It is set forth in detail in the report of the case of the Same Plaintiff v. Liverpool, L. & G. Ins. Co., 136 U. S. 242, 248–252, 10 Sup. Ct. 945, ending with the letter dated May 7, 1886, which terminated the action of the parties in respect to the obtaining an appraisal or arbitration. It is not deemed necessary to repeat this correspondence here. The record of it in the case in the supreme court above referred to was stipulated into the present case upon the trial, and it suffices here to say that it is substantially a prolongation of the controversy as to what should be the rule of proceeding by the arbitrators to be chosen in the reception of proof, and as to the right of the insured to make sale of the property pending the arbitration. The companies insisted that the appraisers, as they called them, should be at liberty to take testimony or not, and so much thereof as they should think proper; the insured contending, on the contrary, for the right to introduce testimony.

The stock was sold by Hamilton at public auction on May 29, 1886.

This case differs in an important fact from that of Hamilton v. Liverpool, L. & G. Ins. Co., 136 U. S. 242, 10 Sup. Ct. 945, in that this insurance company did not, as that company did, after the termination of the negotiation of the companies acting conjointly with Hamilton, demand separately for itself an appraisal.

Referring to the correspondence in this case, it will be seen that it consisted of a joint demand by all the companies for an appraisal as the means of settling the value of the property and the amount of the loss, and a refusal of such demand unless the proceedings of the appraisers should be agreed to be conducted upon certain principles. The companies stood together in making this demand, and, fairly construed, their language indicates that but one body of appraisers was intended, and that the appraisal should be once for all. Each of the companies supported the demand of the others.

The provisions in the clauses relating to the subject were widely different in the several policies. In some, as in the case of the Home Insurance Company, the appraisal, which was to be part of the proofs of loss, was to be a mere report, having no binding force upon either party, and under that provision the demand for an arbitration to fix the amount of value and loss as a condition to the right of recovery was plainly unauthorized. In others, the appraisal was to be had upon the written request of either party, as in the case of the Liverpool, London & Globe Company. In others, it was to be had without such condition, as in the present case. In some, the report or award was a condition precedent to suit, in others not. In some, the number of appraisers was fixed, in others not. In some, two are to be chosen with no umpire. In others, an umpire was provided for, but the mode of appointing him varied even in those. In short, neither the number nor the mode of appointment, nor the functions or mode of proceeding, nor the nature of their report or its legal effect, were the same or alike. This was not a demand for appraisal by this insurance company such as its policy gave it a right to make. It did not acquire its right in any respect from the policies of other companies, and it had no legal concern with their disputes, or the mode to be adopted for their settlement, and had no obligation to champion their cause, or mix its controversy with theirs. The insured was not bound to accept such proposition for determining the value and damage as was demanded of him by the companies, this among them. If he had done so, it would have been an arbitration outside and independent of this policy, standing on the general ground of common-law arbitrations. It is true that Mr. Hamilton did not expressly object to the proposed arbitration on the ground that it was a joint demand. He signified his assent to the demand, provided the arbitration was to be conducted on certain principles. To such a demand he had the right to name his own conditions. He was not put in default in respect to this requirement in the policy by any rightful demand made by the insurance company. The court below

ruled that the demand for appraisal made by the companies in this joint correspondence was not such a demand as this policy authorized, and was ineffectual as a separate request by the Connecticut Insurance Company therefor, and in this I concur.

This seems to have been the question upon which the contest in the court below was principally conducted. But the case involves another question, which, being presented by the record and covered by the exception taken by the plaintiff in error to the direction which was given to the jury to find a verdict for the plaintiffs in that court, we find it necessary to consider.

Referring to this clause in the policy, the question arises whether the insured was not himself bound to take action for the procuring of an appraisal to supply the deficiency in his proofs of loss. The appraisal is not thereby required to be had upon the condition that there shall be a written request by either party, as in Wallace v. Insurance Co., 2 Fed. 658; Insurance Co. v. Badger, 53 Wis. 283, 287, 10 N. W. 504,—in which cases it was held that, inasmuch as those words created a privilege which the insured was not bound to exercise, instead of an obligation, the appraisal was not constituted a condition precedent.

It is conclusively settled in the federal courts, in harmony with the doctrine generally prevailing, that when the parties are found, upon a just and reasonable construction of their contract, to have stipulated that a matter preliminary to the obligation and the duty to pay shall be determined and fixed by certificate or arbitration, such stipulation shall be taken as part of the contract, and enforced. It is only necessary to refer to the cases in 136 and 137 U. S., 10 and 11 Sup. Ct., in which Hamilton was plaintiff, and the cases there cited in support of this proposition. And though a rather reluctant recognition has in some quarters been heretofore given to the validity and effect of such provisions, the tendency of the courts is to regard them favorably, and not by strained construction defeat their apparent purpose, conceiving it to be beneficial. Hall v. Insurance Co., 57 Conn. 105, 17 Atl. 356; Delaware & H. Canal Co. v. Pennsylvania Coal Co., 50 N. Y. 250.

Applying the general rules for the interpretation of contracts, it would seem not to admit of doubt that the parties here intended that in case of loss the amount thereof, if the parties did not agree upon it, should be ascertained by appraisers before there should be any obligation to pay. It is expressly stipulated that if they do not agree upon the amount of the sound value and damage it shall be determined for them by arbitrators, and their award is declared to be conclusive upon those questions. Although called appraisers, their functions are those of arbitrators in respect to the subjects of value and damage. It is further stipulated that their award shall constitute part of the proofs of loss required by the contract, and that until such proofs of loss are furnished the loss shall not be payable. And the covenant to pay the loss is that it shall be paid 60 days after proofs of the same are made in accordance with the terms of the policy. The case of Hamilton v. Home Ins. Co., 137 U. S. 370, 11 Sup. Ct. 133, differed essentially from this. There were

two distinct references found in the policy. The first was for a mere appraisal and report, not binding on the parties, which was to become part of the proofs of loss; the second was for an arbitration after the proofs of loss were received in due form. The liability to pay arose when the proofs of loss were received and found sufficient. The arbitration was an independent matter, not connected with those proofs. It was upon that ground that it was distinguished from the previous case.

The case of Hamilton v. Liverpool, L. & G. Ins. Co., 136 U. S. 242, 10 Sup. Ct. 945, differed from this in that the policy there provided that no action should lie against the company until the award was had. But that difference cannot be material. That language only emphasized what the former language had, in effect, accomplished. It involves an absurdity to say that an action would lie to recover what there is no duty to pay,—a loss that is not payable. In some of the leading cases, where it was held that the terms of the contract established a condition precedent, there was no express provision that an action should not lie before the award was made; and several of these are cases cited with approval by the court in 136 and 137 U. S., 10 and 11 Sup. Ct., already referred to. Scott v. Avery, 5 H. L. Cas. 811; Collins v. Locke, 4 App. Cas. 674; Viney v. Bignold, 20 Q. B. Div. 172; Delaware & H. Canal Co. v. Pennsylvania Coal Co., 50 N. Y. 250; U. S. v. Robeson, 9 Pet. 319; Railroad Co. v. March, 114 U. S. 549, 5 Sup. Ct. 1035. And there are many other such cases. Indeed, this precise point was discussed in the case in 50 N. Y., and the same view expressed as is here entertained. And in the case in 137 U. S., at page 386, 11 Sup. Ct. 133, the court treat a condition necessarily implied from the terms of the contract as equivalent to an express agreement that no action shall be brought until the award is obtained. As has been many times pointed out, it is always a question of construction. Whatever the language may be, if the intention of the parties is sufficiently apparent, effect will be given to it.

The supreme court, in Hamilton v. Liverpool, L. & G. Ins. Co., founds its decision upon the principle adopted and applied in U. S. v. Robeson, 9 Pet. 319, and Railroad Co. v. March, 114 U. S. 549, 5 Sup. Ct. 1035. In the first of these cases the amount of compensation was made to depend on the certificate of an officer in the military service; and in the second upon the certificate of an engineer designated "to prevent all disputes." And, indeed, it is difficult to find much difference between such cases and the present. There could be no doubt that, notwithstanding the reference in the contract, in those and the like cases it would have been perfectly competent for the parties to have agreed upon the subject, and thus have dispensed with the reference, so that, in legal effect, the stipulation comes to about the same thing as here.

It devolved, therefore, upon the plaintiff (below) when notified that the amount of his loss was disputed, to obtain an appraisal of the value and damage before he could demand payment of the loss, unless the company expressly or by implication excused it. It was held in Carroll v. Insurance Co., 72 Cal. 297, 13 Pac. 863, that a dec-

laration upon a policy containing such a provision, which did not aver that the amount of loss had been agreed upon or an award made, or give some excuse for not having obtained it, did not state a cause of action. This would accord with the view of several of the judges in the cases cited, who treat the stipulation as of the substance of the things to be done to constitute performance and complete the cause of action. That duty would be discharged by a fair effort to obtain the appraisal, even though the insured failed in consequence of the fraud or misconduct of the other party, the impracticability of organizing the board, or the proceedings becoming abortive by reason of some radical error of the appraisers, or by any other obstacle preventing him for which he was not at fault. When the conduct of the insurer is such as to lead the insured to suppose that performance on his part is not required, or when the insured takes such a position in regard to his liability as plainly to indicate to the other party that the insurer would not pay the loss even if the particular requirement of the policy in respect of the proofs of loss were executed by the insured, he is excused from its performance.

In the complaint of the plaintiff in the court below it was alleged that he delivered to the defendant due proofs of loss, and had done and performed all the conditions in the policy. In the first defense presented by the answer this allegation was denied. The plaintiff below nowhere in his pleadings, either in the complaint or in his original or amended reply, alleges that he had any reason for not demanding an appraisal. He does not allege that he was misled by the defendant, and sets forth no facts from which a waiver could be inferred, except that in the third paragraph of the amended reply it is alleged that the defendant was silent, and made no objections, after receiving the proofs of loss, and thereby waived any or different proofs. But this allegation is disproved by the evidence when it is shown that the defendant signified its disagreement with the amount of the plaintiff's claim. Nor is there anything in the bill of exceptions, which reports the evidence in full, tending to show that the insured made any attempt to procure the appraisal provided for in the policy; and the remaining question is whether he was excused from doing so by the conduct of the company. To operate to that result, the course pursued by it must have been such as to have given him good reason to suppose that a request from him for an appraisal would have been refused. In that case he would not be required to do a vain thing. Findeison *v.* Insurance Co., 57 Vt. 520; Devens *v.* Insurance Co., 83 N. Y. 168; Hambleton v. Insurance Co., 6 Biss. 91, 95; Tayloe v. Insurance Co., 9 How. 390, 403; Insurance Co. *v.* Wolff, 95 U. S. 326, 330; Insurance Co. *v.* Pendleton, 112 U. S. 696, 709, 5 Sup. Ct. 314.

Tried by this test, the action of the company in its participation in the joint correspondence does not show that the insured had any good reason for believing that the company would not have assented to an appraisal in its case if, without insisting on an unwarranted predetermination of the rules by which the appraisers should be governed, the insured had requested it. In fact, the

whole correspondence, taken together, leads fairly to the opposite inference, and the concluding paragraph of the letter of May 7th from the companies to the insured, which closed the correspondence, tends strongly to indicate that such a proposition from him would have been readily assented to by the company. It was stated in the first letter (that of April 28th) that the several companies waived none of their rights under the terms of their respective policies. The insured must be presumed to have known and understood—what he now contends and the court holds—that the arbitration then contemplated was not the one provided for by the policy, and there was still the same opportunity after as before that correspondence to have obtained the appraisal and award. The case is not like one where one party has lulled the other into a sense of security, or prolonged the negotiations until the time has elapsed within which an act might be done according to the agreement. When the negotiations for a joint appraisal and award ended, and nothing had been accomplished, the parties stood where they did before, and the proper course was still open. Instead of pursuing it, Hamilton proceeded to sell and scatter the damaged property on the 28th of May, at which date only about half of the 60 days given to the company by the policy within which it might take the property at its appraised value had expired. He thereby deprived the defendant of another right secured by the contract, and forfeited his own right of recovery thereon.

For these reasons my opinion is that the direction to find a verdict for the plaintiffs upon the case as exhibited by the pleadings and the evidence was erroneous.

SWAN, District Judge. The plaintiff in error is one of 12 companies which had insured Robert Hamilton against loss or damage by fire on his stock of tobacco in his factory at Covington, Ky. The sum insured by plaintiff in error was $25,000. The terms of the policy material to the questions presented by the record are the following: The loss was—

"To be paid to the assured or his legal representatives 60 days after due notice and satisfactory proofs of the same are made by the assured and received at their office in Chicago, in accordance with the terms of the policy hereinafter mentioned. * * * (7) Of Losses. In case of loss the assured shall give immediate notice thereof, and shall render the company a particular account of said loss under oath, stating the time, origin, and circumstances of the fire; the occupancy of the building insured or containing the property insured; other insurance, if any, and copies of all policies; the whole value and ownership of the property, and the amount of loss or damage; and shall produce the certificate, under seal of a magistrate, notary public, or commissioner of deeds nearest the place of fire, and not concerned in the loss or related to the assured, stating that he has examined the circumstances attending the loss, knows the character and circumstances of the assured, and fully believes that the assured has, without fraud, sustained loss on the property insured to the amount claimed by the said assured. * * * [Here follow provisions that assured shall, if required, furnish books of account and other vouchers for examination, the original or certified duplicate invoices of all insured property, shall submit to one or more examinations by a person appointed by the company, and shall sign the same when reduced to writing, under the penalty, in case of refusal to meet these requirements, of forfeiting all claim under the policy.] Loss or damage to property par-

tially or totally destroyed, unless the amount of said loss or damage is agreed upon between the assured and the company, shall be appraised by disinterested and competent persons, one to be selected by the company and one by the assured; and, where either party demand it, the two so chosen may select an umpire to act with them in case of disagreement; and if the said appraisers fail to agree they shall refer the difference to such umpire, each party to pay their own appraiser and one-half the umpire's fee; and the award of any two in writing shall be binding and conclusive as to the amount of such loss or damage, but no appraisal or agreement for appraisal shall be construed under any circumstances as evidence of the validity of said policy or of the company's liability thereon. When personal property is damaged, the assured shall put it in the best order possible, and make an inventory thereof, naming the quantity and cost of each article, and upon each article the damage shall be separately appraised; or, if a building, by an estimate in detail; and the report of the appraisers in writing under oath shall form a part of the proofs hereby required, and until such proofs and certificates are produced and examinations and appraisals submitted the loss shall not be payable. The company reserves the right to take the whole or any part of the property so damaged at the appraised value. * * * All fraud or attempt at fraud by false swearing or otherwise shall forfeit all claim on this policy."

April 16, 1886, within the life of the policy, a fire occurred on the premises insured, and, as the assured claims, the stock of tobacco was greatly damaged by smoke, though it was not physically destroyed. April 26th—10 days after the fire—the assured served on the agent of the Connecticut Fire Insurance Company sworn proofs of loss, which were acknowledged by the agent the next day, and transmitted to the home office of the company. The insured's letter accompanying them called attention to the proofs of loss, "with invoice attached in compliance with the terms of your policy," and adds: "If there is any defect in the substance or form of the above proof, please advise me at once, that I may perfect the same to your satisfaction; and return the proof to me in such case for that purpose." His letter further stated that the property described and damaged had been invoiced and arranged, and was ready for examination by the company. The "invoice attached" was headed, "Inventory of Property in Nos. 413 and 415 Madison Ave., Covington, Ky., April 16, 1886," and stated the quantity in pounds, quality, and value of the damaged stock. No objection was made by the company to the proofs, although they were not accompanied by "the report of the appraisers in writing under oath."

On the day following the acknowledgement of the receipt by the agent of the company of the proofs of loss, viz. April 28th, the 12 companies united in a joint demand upon Mr. Hamilton, set forth in the opinion of Judge SEVERENS, notifying Hamilton that they "beg leave jointly to take exception to the amount of claim made, and to demand that the question of the value of and the loss upon this stock be submitted to competent and disinterested persons, chosen as provided for in the several policies of insurance," etc., and "jointly" protested against the removal, sale, or other disposition of the property until such appraisement has been had, etc., and instructs the insured to address his "reply" to the "joint" demand made above in care of, etc. To this demand Mr. Hamilton declined to accede, except upon certain conditions, not acceptable to the company; and

a lengthy correspondence ensued between him and the companies collectively, which is set forth in the cases of Hamilton v. Liverpool, L. & G. Ins. Co., 136 U. S. 242, 10 Sup. Ct. 945, and Hamilton v. Home Ins. Co., 137 U. S. 370, 11 Sup. Ct. 133, and by stipulation is made part of this record. No demand upon the assured for an appraisal other than that evidenced by this joint correspondence, so called, was made by the plaintiff in error. This correspondence closed May 7, 1886, without agreement for the appraisal it proposed having been effected. On May 29th Hamilton sold at auction, pursuant to advertisement, the damaged tobacco.

This suit was brought more than 60 days after the receipt by the company of Hamilton's proofs of loss served April 26th.

The circuit court directed a verdict for plaintiff in error's portion of the loss. Error is assigned upon the instruction.

The first contention of the company is that the "joint correspondence" which passed between the insurers collectively and Mr. Hamilton constituted a demand by the plaintiff in error, under its policy, for the appraisal of the insured property. On this point it is well said by Judge SEVERENS:

"This was not a demand for an appraisal by the insurance company, such as its policy gave it a right to make. It [the company] did not acquire its rights in any respect from the policies of other companies, and it had no legal concern with their disputes or the mode to be adopted for their settlement, and had no obligation to champion their cause or mix its controversy with theirs; and the insured was not bound to accept such proposition for determining the value and damage as was demanded by the companies, this among them. If he had done so, it would have been an arbitration aside and independent of the policy, standing on the general ground of common-law arbitration."

With this I entirely agree. The court below correctly ruled that the joint demand made by the insurance companies, some of whom were not entitled to an appraisal under their policy, could not be held to be the several demands of any of the insurers.

2. The second point urged is that, under the terms of the policy in suit, the appraisement is a condition precedent to an action on the policy, because the appraisal and award are, by the express language of the contract, made "part of the proofs of loss," and the loss is not payable until such proofs are made. It will be seen that the only difference in phraseology between the promise of this company to pay the loss and that expressed in the policy of the Home Insurance Company set forth in 137 U. S. 370, 11 Sup. Ct. 133, is the insertion in the former of the word "satisfactory" preceding the word "proofs," and after the words "at their office in Chicago" the policy in suit attaches to the promise the following: "In accordance with the terms of this policy hereinafter mentioned."

It is not necessary to decide whether these differences qualify in any degree the undertaking of the company to the assured in case of loss, for, if they were intended to make its promise conditional on the satisfactory character of the proofs of loss and their accord with the requirements of the policy, there can be no doubt that the company could waive any defect in them; and its failure to notify the insured of their insufficiency in any particular would not be per-

mitted because of it to defeat the claim of the insured when it had rested its defense upon other grounds, and thereby misled him. The plaintiff in error made no objection to the proofs of loss beyond its joinder with the other insurers in taking "exception to the amount of the claim made," and their demand that the question of value be submitted to appraisers, evidenced by the joint letter of April 28th, which we agree was not a demand for the appraisment stipulated for in its policy. Having thus tacitly accepted the proofs of loss as "satisfactory" and "in accordance with the terms of the policy," and, as we hold, having failed to demand of the insured the appraisal authorized by its policy, the company cannot now be heard to object to the insufficiency of the proofs of loss, notwithstanding the provision that "the report of the appraisers in writing under oath shall form a part of the proofs hereby required," unless the contract expressly or by necessary implication make such appraisal a condition precedent to the assured's right of action.

It is claimed by the company that such is the force and effect of the provisions in this policy, and that the clause that, "until such proofs and certificates are produced, and examinations and appraisals permitted, the loss shall not be payable," in connection with the agreement to refer the valuation to appraisers, manifests the intention of the contract to make the assured's right of action dependent upon and secondary to the appraisement. In support of this position it is contended that this case is not distinguishable from Hamilton v. Liverpool, L. & G. Ins. Co., 136 U. S. 242, 10 Sup. Ct. 945. The policy in that case, after providing for an appraisal substantially like that of the policy in suit, and that unless such appraisal was permitted the loss should not be payable, contained this further condition: "It is furthermore expressly provided and mutually agreed that no suit or action against this company for the recovery of any claim by virtue of this policy shall be sustainable in any court of law or chancery until after an award shall have been obtained, fixing the amount of such claim in the manner above provided," (i. e. by appraisement, as here.) The policy in suit has no such condition. The argument of the plaintiff in error therefore necessarily is that the words in the policy, "the loss shall not be payable," are the legal equivalent of the clause expressly inhibiting suit or action on the policy until after the award of the appraisers. This position cannot be maintained consistently with the ruling in the case of Hamilton v. Home Ins. Co., cited supra, in which the policy in suit had substantially the same provision as that of the plaintiff in error here, viz. "that until such proofs, declarations, and certificates are produced, and examinations and appraisals submitted, by the claimants, the loss shall not be payable;" and, like this, had no provision whatever postponing the right to sue until after an award. Under that case it is not enough to bar an action that the contract provided that "the loss shall not be payable" until compliance with the conditions of the contract, but it must also expressly or by necessary implication make the right to sue dependent upon the arbitration, or inhibit suit or action until such compliance. The absence of this latter prohibition is the distinguishing feature

between the case of Hamilton v. Home Ins. Co., 137 U. S. 384, 11 Sup. Ct. 133, and that of Hamilton v. Liverpool, L. & G. Ins. Co., 136 U. S. 254, 10 Sup. Ct. 945. There is no language in the policy under consideration which implies that the appraisal is a condition precedent to the right of action, except the provision that until it is permitted "the loss shall not be payable," which, without more, is insufficient.

This conclusion is fortified by the terms of the policy relative to the appraisal and the nature of the claim made by the assured. Under the terms of this policy, loss or damage to property partially or totally destroyed is classified as a subject-matter of appraisement, distinct and apart from that of "personal property damaged," subsequently provided for in the policy. In the ascertainment of the amount of the loss arising from the partial or total destruction of the property, a complete scheme of appraisal is formulated by the policy, which in express terms makes the award of the appraisers, or, if they fail to agree, and an umpire is appointed, then of any two of the tribunal thus constituted, "binding and conclusive as to the amount of such loss or damage," (i. e., unmistakably, the amount of the loss or damage "to property partially or totally destroyed," and none other.) Beyond the valuation of such property the policy confers no authority upon the appraisers. If this appraisal is properly had, and the loss on this class of property thus fixed, the agreement of the parties has left for judicial inquiry only the validity of the policy and the liability of the company thereon. A subsequent and independent provision of the policy deals with the second class of property thus: "When personal property is damaged, the assured shall put it in the best order possible, and make an inventory thereof, naming the quantity and cost of each article, and upon each article the damage shall be separately appraised; or, if a building, by an estimate in detail; and the report of the appraisers in writing under oath shall form a part of the proofs hereby required." It will be seen from this that the parties have not, by their contract, nominated or agreed upon a tribunal for appraisal of this class of property; nor have they said that the appraisal of the damage of each article shall be "binding and conclusive," nor in any manner defined its effect, but the contract merely declares that "upon each article the damage shall be separately appraised," i. e. justly valued, which is the normal meaning of the word "appraised." It is not said that such appraisal shall be by the same persons whose award upon property partially or totally destroyed is made binding or conclusive "as to the amount of such property," and whose action is expressly limited to such property. Nor is it provided that any "award" shall be made of the damage to personal property "not partially or totally destroyed." The provision that "until such appraisals [plural] are permitted the loss shall not be payable" is demonstrative that the valuation of the loss or damage to "property partially or totally destroyed" and that of "personal property damaged" are separate matters. The appraisers of the first must make an "award" in writing, (not under oath,) which is conclusive and binding; while the valuation of the second class is evidenced by a

mere "report in writing," which is not declared to be binding upon the parties in any respect, and is, in truth, but a part of the proofs of loss. Hamilton v. Home Ins. Co., supra. There is nothing in the language of the policy to exclude the right of the assured, or that of the company's agent, from appraising each article, ("of personal property damaged,") as no method of appraisal of that class of property is contracted for in the policy, while the carefully framed provision for the ascertainment of the amount of loss or damage to property partially or totally destroyed commits the conclusive decision of that question to a tribunal designated and agreed upon by the parties. The inference naturally derivable from the omission to provide a like scheme for the valuation of "damaged personal property," and from the fact that its value is to be evidenced only by a "report in writing under oath" instead of an "award in writing of any two" of the appraisers, is that it was not the intention of the contract to make the result of the separate valuation of each article a finality between the parties, but only evidence for the action of the company. Remembering that the claim of Hamilton is not for "property partially or totally destroyed," but is founded on the damage to the tobacco untouched by fire, claimed to have been done by the taint imparted to it by the smoke, it seems clear that the effect of the provision for appraisal of property destroyed is a question which does not necessarily arise here, and that the valuation of the damage to the stock by smoke is not referred to such appraisers, nor made by the contract a condition precedent to suit on the policy.

A further consideration seems to repel a construction of the policy which would postpone the assured's right of action until an appraisement had been made and reported. The phrase, "and until such appraisals are permitted," is not mandatory upon the assured, but permissive to the company. It modifies the apparently absolute requirement that "loss or damage, unless the amount of said loss or damage is agreed upon between the assured and the company, shall be appraised," etc., and makes it provisional merely. It confers on the company the right to the stipulated appraisal if it be seasonably and properly demanded, and requires the assured to consent to it when thus made. It is not said that the loss shall not be payable until such appraisals are had, but until they are "permitted." It was, therefore, the duty of the company to take the initiative in proceeding for an appraisement. This it failed to do, but united with the other insurers in asserting a joint right of appraisal, which the assured lawfully rejected. Hamilton did not refuse to "permit" an appraisal under the policy, and, as such refusal is made by its express terms the substantial condition on which the "loss shall not be payable," his right of action was neither defeated nor deferred because no appraisal had been had.

For the reasons stated, and agreeably to the principles laid down in the cases cited, the assured's right of recovery is not expressly limited to the sum named by the appraisers; neither is it agreed

that his action shall not be brought until there has been an arbitration, or that arbitration shall be a condition precedent to the right of action. These are the only conditions, as I read Hamilton v. Home Ins. Co., cited supra, approving Dawson v. Fitzgerald, 1 Exch. Div. 257, which avail to bar an action on a contract.

Plaintiff in error, by receiving the proofs of loss without objection to the want of the appraisers' report, and by its failure to demand an appraisal authorized by the terms of its policy, waived all objections to the proof of loss, and, in my opinion, the jury were rightly instructed to render a verdict for the plaintiffs.

TAFT, Circuit Judge. This case was once argued before my Brothers SEVERENS and SWAN, sitting as the circuit court of appeals. They were unable to agree. A reargument was ordered, and upon the rehearing I sat with them. The differing views of my brethren remained unchanged by the rehearing, and are set forth in the foregoing opinions, which so fully and clearly state the case and the arguments pro and con as to render any statement or full discussion of the case on my part unnecessary.

Both the judges concur with the views of Judge Sage in the court below, that the demand of the 12 companies in what is called the "joint" correspondence was for a single appraisal by one board of appraisers, and that this demand was not within the requirement of the defendant's policy. The companies and Hamilton seem to have been struggling with the inherent difficulties of the situation, growing out of the great inconvenience which would attend the literal compliance with the terms of all the 12 policies. In their efforts at an agreement, however, they were all, insurers and insured, negotiating outside of the policies, and the demands of each side could not be rested on the terms of the policies. Hamilton, in the case now before us, had furnished proofs of loss in which the amount thereof was fixed by himself. If those proofs had been accepted, then he would have complied exactly with the term of the policy on that subject, for in that case he and the defendant company would have agreed upon the amount of the loss, and the provision for an appraisal would have remained inoperative. Instead of agreeing to the amount of the loss, as fixed by him, the defendant company, with all the others, notify him that they do not agree to it. I conceive that such a notification, though made by 12 jointly, works for the benefit of each company separately. I know no reason why it should not. If they all object, each objects, and it was only necessary that the insured should be advised that the contingency had not occurred which rendered the provision for an appraisal inapplicable. It seems clear, therefore, that while the joint demand for an appraisal or arbitration of the character described in the letters sent by the 12 companies was not a demand for an appraisal secured to the defendant company under its policy, the joint notice of an objection to the amount was a sufficient notice under the policy to apprise the plaintiff, Hamilton, that there could be no agreement between him and the defendant company as to the amount of loss.

While the defendant company was demanding a joint appraisal, and until the "joint" correspondence ceased, obligation on the part of Hamilton to proceed under the appraisal enjoined by the policy was clearly suspended.. The last letter of Decamp, agent for all the companies, including the defendant company, advised Hamilton that "if the form of 'submission to appraisers' we submitted contains any provision or condition limiting or defining the duties of the appraisers, and not prescribed by the several policies, each company will submit its own form, as we desire and demand a submission free from any conditions by either party."

By this letter the defendant company assumed an obligation to submit a form of appraisal to Hamilton. Whatever duty, under the policy, there might have been upon Hamilton to take the initial step towards an appraisement after receiving notice of a disagreement as to valuation, so as to fulfill the condition precedent to his recovery, this communication was a clear waiver of that duty by the defendant company. It was a clear invitation to Hamilton to do nothing until the company had acted. The company never did act. It cannot now be heard to say that Hamilton lost all his rights under the policy by a delay which the company itself occasioned. The appraisement was, under this policy, a part of the proof of loss. The conduct of the company was as much as to say: "We have your proof of loss. We object to it, and we will hereafter point out to you the method by which it can be remedied." Subsequent failure to point out the method of remedying it, estops the company from asserting that the proof of loss does not comply with the requirements of the policy.

The action of the circuit court was, it seems to me, right, and the judgment should be affirmed.