## HARRISON v. GERMAN-AMERICAN FIRE INS. CO.

(Circuit Court, S. D. Iowa, E. D. April 25, 1895.)

1. INSURANCE—PROOFS OF LOSS—WAIVER.

Defendant's adjuster was sent to adjust and settle the loss on plaintiff's house and its contents. Plaintiff furnished him with a list of the personal property in the house at the time of the fire, showing the property saved, and that lost. The adjuster told plaintiff that he only wanted to know what property was gone, and, with list in hand, made a personal examination of the property. Defendant intimated for the first time at the trial that it would insist upon more formal proofs of loss. *Held*, that the right to formal proofs of loss was waived.

2. SAME—CONDITION OF POLICY—ARBITRATION—WAIVER.

A policy provided that, unless the loss thereunder was agreed upon, it should, at the written request of either party, be arbitrated, and an award obtained in the manner provided by the policy was made a condition precedent to any action thereon. After loss, without any written request therefor by either party, and before any agreement as to the amount of the loss was even attempted, plaintiff and the adjusters of the companies interested signed a joint agreement for the appraisal of the property cov-

ered by defendant's policies, as well as property not so covered, but in-cluded in policies of another company. No award was made, owing to the failure of the appraisers to agree. *Held*, that the arbitration attempted was not such as was contemplated in the policy, which was waived by the attempted arbitration, and that the "condition precedent" clause did not apply thereto.

8. SAME—AUTHORITY OF AGENTS—WAIVER OF CONDITIONS.

A stipulation that no agent shall be held to have waived any of the con-ditions of the policy, unless such waiver shall be indorsed thereon in writing, does not apply to conditions to be performed after the loss is in-curred; and therefore an adjuster can waive a provision making arbitra-tion in accordance with the terms of the policy a condition precedent to suit, by making a different agreement for arbitration.

4. SAME—CONDITIONS OF POLICY—ARBITRATION.

McClain's Code Iowa, § 1734, provides that the amount stated in the policy shall be prima facie evidence of the value of the property, and that, to maintain an action on the policy, it shall only be necessary to prove loss of the building insured, and notice thereof to the company, accompanied with affidavit showing the manner and extent of loss, any-thing in the policy to the contrary notwithstanding. Quaere, whether an arbitration relating solely to the value of the buildings insured can be made a condition precedent to an action on the policy.

5. SAME—ABANDONMENT OF ARBITRATION.

Where appraisement by arbitrators has been entered upon, and the ar-bitration fails because the arbitrators cannot agree on an umpire to decide between them, according to the terms of the arbitration, and defendant and its arbitrator fail to make any further effort to come to an agreement, though notified to do so, plaintiff may consider the arbitration abandoned, and sue on the policy.

Action by George D. Harrison against the German-American Fire Insurance Company on a policy of insurance.

D. N. Sprague and A. H. Stutsman, for plaintiff.
McVey & Cheshire, for defendant.

WOOLSON, District Judge. This action was commenced in the district court of Louisa county, Iowa; the petition having been filed January 28, 1893. On application of defendant, the action was removed to this court. The petition exhibits two policies, of the form provided by the New York statute, against fire,—the one covering plaintiff's dwelling house, situated in Louisa county, Iowa (amount of insurance, $2,000); the other covering also such house, with an additional insurance of $1,000, and also insurance for $800 on certain personal property therein described, and con-tained in said house. The petition alleges that said property was destroyed and injured by fire on October 4, 1893, and that plain-tiff was thereby injured in the sum of $8,000. The petition also avers that plaintiff did not make formal proofs of loss, because of defendant having waived the same, and that, plaintiff having given to defendant immediate notice of the fire, defendant, to wit, on October 20, 1892, by its agent, agreed to arbitrate the loss and damage, and each party chose one arbitrator, but said parties did not appraise or fix the loss to plaintiff, although plaintiff has been willing and anxious to have them do so. The "amended and sub-stituted answer," filed herein July 5, 1894, after pleading a gen-eral denial, specifically pleads, in substance, that this action is

premature, and cannot be maintained, because of noncompliance by plaintiff with the arbitration clauses (hereinafter set out) of said policies, and clause as to proofs of loss, which are claimed to be by said policies made conditions precedent to institution of suit thereon, and that this action was prematurely commenced within 90 days from any attempts at proofs of loss. Plaintiff on July 5, 1894, filed his replication, denying that any arbitration was ever attempted or made under or by virtue of the terms of said policy; alleging that there was no disagreement of the parties, and no attempt to agree, as to loss, before the appraisement agreement was signed, no written demand for appraisal was made by either party, and, through no fault of plaintiff, the appraisers appointed have not agreed, but have failed to appraise said loss, though plaintiff had, by written notice, requested defendant and said appraisers to proceed to the completion of said appraisement; and that plaintiff had used all reasonable efforts to have said appraisement completed, and that such completion has been prevented because the appraiser selected by defendant, then unknown to plaintiff, is in some way interested in defendant's behalf, and not a disinterested person, and has absented himself from the state, and failed to communicate with the other appraiser. The cause was tried to the court July, 1894, a jury having been waived. The policies in evidence are identical in their terms and conditions, only the written portions differing, and these written portions relate to premium paid, amount and duration of insurance, and property insured.

It is conceded that, by the terms of the policy contract, plaintiff was bound to furnish proofs of loss. Defendant claims that these proofs have never been furnished. Plaintiff concedes that formal proofs were not furnished, but claims such proofs were waived by defendant. The burden is on plaintiff to substantiate his allegation of waiver.

The evidence shows that plaintiff is a citizen of the state of Iowa, and defendant is a citizen of the state of New York. The fire occurred on October 4, 1892. About October 14th the local agent of defendant who had issued to plaintiff the policies in suit informed plaintiff that defendant's adjuster would be present on October 20th with an appraiser, and requested plaintiff to have an appraiser ready. On October 20th defendant's adjuster, Rodger Swire, came, accompanied by C. H. Turner, who was the adjuster of another company in which plaintiff held insurance. Plaintiff had made out a list of the personal property which was in his house at the time of the fire. Mr. Swire, with the associate adjuster, examined the burned premises, and also the personal property which had been saved from the fire. Of the $2,800 loss on personal property, but $800 was covered by insurance. At this examination they had a specific list of the personal property which was in the house at the time of the fire, showing the property saved and that lost, which plaintiff had furnished them. This list was used by the adjusters in their examination. Plaintiff testifies that the adjusters told him that all

they wanted a list for was to know about the property which had been burned. This list appears to have been satisfactory to the adjusters at that time, as the personal property was not thereafter investigated, or included in the appraisement, nor has any difficulty or contention arisen on the trial with reference to the personal property destroyed. Some of the articles in this list did not have the prices carried out. As to these, plaintiff and the adjusters procured prices from the business houses in that community. Plaintiff claims that these facts constitute a waiver of proofs of loss, or, rather, of formal proofs or further proofs, while defendant disputes this claim. That the policy contract requires such proof, unless the same is waived by the defendant, is conceded. The office to be performed by proof of loss is to advise the defendant with regard to the fire, the property insured, and the property lost or damaged by the fire. Such proofs are entirely for the advantage of the insurer. And the courts may well hold that anything which, when presented, is satisfactory on these points to the insurer should be equally satisfactory to the court. On this principle, the decisions, with marked unanimity, hold that whenever the insured furnishes the insurer with a list or statement which is intended as proofs of loss, to provide the information for which the contract calls, and no objections are made thereto by the insurer within such reasonable time thereafter as to afford the insured opportunity to remedy or supply the defects therein, the insured has waived—or, as some courts have stated, is estopped from claiming—more specific or complete compliance. Mere silence on the part of the insurer, where no proofs whatever are offered, does not waive the contract agreement. The doctrine of such waiver is well stated in Weidert v. Insurance Co., 19 Or. 261, 24 Pac. 242:

"The company must, by some act of an agent having real or apparent authority, have done or said something which induced the plaintiff to do or forbear to do something whereby he is prejudiced."

And in Gould v. Insurance Co., 134 Pa. St. 570, 19 Atl. 793, the rule applying to waiver of proofs is thus stated:

"If the insured, in good faith, and within the stipulated time, does what he plainly intends as a compliance with the requirements of his policy, good faith equally requires that the company shall promptly notify him of their objections, so as to give him opportunity to obviate them; and mere silence may so mislead him, to his disadvantage, to suppose the company satisfied, as of itself to be sufficient evidence of waiver by estoppel."

No claim upon the trial was made that the adjuster Swire was not fully authorized to perform the duties he assumed. He was sent by his company to settle and adjust the loss. His letter to the local agent who had issued to plaintiff the policies of insurance sued on announces that he will attend "to take up the losses on Mr. Harrison's property." As was said by Circuit Judge Lowell in Perry v. Insurance Co., 11 Fed. 484, with reference to an adjuster for defendant in that case, wherein the defense here interposed was set up, "If [the adjuster] had authority to adjust and settle the loss, we think, as a matter of law, he could do so with or without proofs." Bearing in mind that policy conditions such as we

are now considering should be most strongly construed against the insurer, and with a view to avoid forfeitures, and that no question has been raised as to the good faith of plaintiff with regard to the list furnished to the adjuster, we may note that the undisputed evidence is that plaintiff was told by the adjusters (who are shown to have acted in concert and were together), at the time this list of property was furnished to them by plaintiff, "that all they wanted to know about was what [property] was gone." And thereupon, with list in hand, they made a personal examination of the property. There can be no question but that plaintiff intended the list furnished to be a compliance with the terms of the policy as to the statement of property lost, and there is no suggestion that the adjuster, or any one for the company, expressed any objection to the list, either as to incompleteness or informality of same. So far as the evidence shows, the first intimation that plaintiff had of any dissatisfaction on part of defendant with the list, as being incomplete or unsatisfactory, or that defendant would insist on more formal or other proofs of loss, was on the trial of this cause, in July, 1894. And there is no evidence that defendant has been in any wise prejudiced by the absence of more complete or formal proofs of loss. The list was at the time accepted by the adjusters as sufficient, and their actions and statements abundantly justified plaintiff in believing, and relying thereon, that defendant was satisfied therewith, and did not demand or desire other or further proofs. Defendant's attitude in this matter at that time is also shown by the fact that, in the appraisement entered into on October 20th, no part of the personal property was included. I therefore find established by the evidence that defendant waived any other or further proofs of loss than those plaintiff furnished to its adjuster on October 20, 1892, and as to this defense I find against defendant.

Defendant claims that the award of damages by appraisers is a condition precedent to suit, and no such award has been made. The contract as to appraisement is stated in the policy as follows:

"Loss or damage to property partially or totally destroyed, unless the amount of said loss or damage is agreed upon between the assured and company, shall, at the written request of either party, be appraised and determined by disinterested and competent persons, one to be selected by this company and one by the assured, and where either party demand it the two so chosen may select an umpire to act with them in case of disagreement, and if the said appraisers fail to agree they shall refer the difference to such umpire,—each party to pay their own appraiser and one-half the umpire's fee; and the award of any two, in writing, shall be binding and conclusive as to the amount of such loss or damage, but no appraisal, nor agreement for appraisal, shall be construed, under any circumstances, as evidence of the validity of said policy, or of the company's liability thereon."

The policy further provides:

"It is expressly covenanted by the parties hereto that no suit or action against this company for the recovery of any claim by virtue of this policy

shall be sustainable in any court of law or chancery until after an award shall be obtained fixing the amount of such claim in the manner above provided."

The decision rendered in Hamilton v. Insurance Co., 136 U. S. 242, 10 Sup. Ct. 945, settles beyond question the holding of the federal courts that, as said in Connecticut Fire Ins. Co. v. Hamilton, 8 C. C. A. 114, 59 Fed. 263:

"When the parties are found, upon a just and reasonable construction of their contract, to have stipulated that a matter preliminary to the obligation and the duty to pay shall be determined and fixed by arbitration, such stipulation shall be taken as a part of the contract, and enforced;" and that "the tendency of the courts is to regard them favorably, and not, by forced construction, to defeat their apparent purpose, conceiving it to be beneficial."

It is, however, recognized, as stated in Insurance Co. v. Stocks (Ill. Sup.) 36 N. E. 408, by the supreme court of Illinois:

"This and like clauses are inserted in the policy by the insurance company, however, without any special stipulation between the parties in reference thereto, and for the protection and benefit of the company. The insured must arbitrate, or offer to do so, unless the obligation is waived, while the company may or may not, at its option, the only effect of its neglect or refusal being to waive its right to insist upon the condition when sued upon the policy. Moreover, valuation of the property cannot increase the amount to be recovered by the assured, while the appraisement may diminish the amount to be paid by the company. The rule, therefore, so often announced by the courts, that, in construing these and like clauses, that construction is to be adopted which is most favorable to the insured, applies."

That that portion of the policy contract which makes arbitration of damage a condition precedent may be waived by the company is now the uniform holding of the courts. And the courts, in determining this question of waiver, hold the company to a strict compliance with the specific terms of the contract before they will so apply the condition as to work a failure to the insured of his right to sue; for that right to sue has been, not stipulated away by the insured,—the courts would not uphold such a stipulation,—only deferred in its right of exercise until certain preliminaries agreed upon in the contract have been performed. There must be, on the part of the insurer, no action which is inconsistent with the right to rigidly insist on an award as a condition precedent, else that right is waived, and the terms of the policy contract, in regard to time and manner of insisting on such appraisement, in providing for it, and in executing it, must all closely follow the provisions of the contract, or the appraisement attempted is not the appraisement which the policy has made a condition precedent. A court should not, and will not, permit its powers and process to be stayed, and prevented from taking cognizance of, and administering the right with reference to, controversies between citizens, by any stipulation made before the controversy arose, unless he who insists on such staying of justice shall have brought himself sharply and fully within the letter as well as the spirit of the stipulation.

What is shown by the evidence in this case? On October 20th next after the fire, which occurred on October 4th, plaintiff and the adjusters of the companies interested signed an agreement

for appraisement of the dwelling house included in defendant's policies, and also of other buildings as well, which were included in the policies issued by the other company, but which are not included in policies in suit. There was no agreement, or effort to agree, between the plaintiff and defendant as to the value of the property included in the appraisement agreement, or the loss or damage suffered by fire, except that plaintiff offered to have the adjuster for the other company fix the value or loss which he had suffered. Nor was there any disagreement as to loss or damage suffered by plaintiff. The evidence affirmatively shows that no written request was made by either party for an appraisement. But defendant's adjuster, without attempt at agreement with plaintiff, had drawn up, and, with the adjuster of the other company, signed, with plaintiff, the appraisement agreement offered in evidence. This agreement covers no part of the personal property included in the policies in suit, while it does include property not included in either of defendant's said policies. And, further, the terms of the policies as to appointment of umpire, and the terms of the agreement, are not in accord. In the latter the umpire is to be selected, "if necessary, to decide upon matters of difference only," and such necessity must be determined by the appraisers. The facts, as proven, with reference to the attempted appraisement, are that on October 20, 1892, and pursuant to notice orally given to plaintiff by the local agent of defendant, defendant's adjuster, Rodger Swire, came to the plaintiff's residence, bringing with him one Lund, whom he proposed to appoint as an appraiser. Without any written request therefor by either party, without any disagreement by either party as to values, loss, or damage suffered by plaintiff, and before any agreement was attempted thereto, defendant presented, and, with the other adjuster, signed, with plaintiff, an appraisement agreement, which had primarily been drawn in the interest of, and to be used in adjusting loss in, the Hartford Fire Insurance Company. This agreement does not refer to, or in any wise include, the policies in suit, except as, in its opening statement, it says:

"It is hereby agreed by Geo. D. Harrison, of the first part. and the Hartford Fire Insurance Company, of Hartford, Conn. (and such other companies as sign this agreement), that Geo. J. Fischer and Hans Lund (together with a third person to be appointed by them, if necessary, to decide upon matters of difference only), shall appraise," etc.

And the property to be appraised is described as covered by policy No. 1,113 of said Hartford Fire Insurance Company, and, further on in said agreement, is specifically described. The only specific reference to the defendant company—in fact, the only reference whatever, except in the parenthetical reference above quoted —is the signature to the agreement of "German-American Ins. Co., Rodger Swire, S. A." Fischer, who was selected by plaintiff, resided in Louisa county, Iowa, in the vicinity of the fire. Lund, selected by defendant, resided at Kansas City, Mo. The evidence shows that the appraisers at once began their work, but before the first half day had passed they were in serious disagreement. And it was

only after long and earnest pleading on the part of plaintiff and both the adjusters that the appraisers resumed their attempt at appraisement. On the next day, Lund informed his coappraiser that he could not then remain longer, but must return to his home, in Kansas City. The appraisers, it appears, then agreed that Fischer should, if possible, go to Kansas City, and they would there complete the appraisement. But Fischer was taken sick, and was unable to go. Correspondence passed between them meanwhile. Fischer was urging Lund to come to Louisa county and complete the appraisement, while a letter from Lund to Fischer dated November 19, 1892, insists on Fischer coming to Kansas City and completing the appraisement. Lund came to Iowa about January 20, 1893, while Fischer was not yet well. An effort was then apparently made to select an umpire. As might naturally have been expected, while matters were at this stage, no umpire was agreed upon, although each appraiser suggested names to the other, while plaintiff earnestly pressed on them the necessity for immediate action. The adjusters separated, Lund returning to his home, each desiring to examine as to the persons the other had suggested. They never came together again. Nor did defendant, so far as the evidence shows, make any further effort at appraisement. On December 10, 1892, December 19, 1892, and January 4, 1893, plaintiff is shown to have written the adjuster, urging action towards settlement of his loss. And on April 28, 1894, plaintiff served on the adjuster, Swire, and also on the two appraisers, a notice demanding completion of the appraisement. Fischer appeared at the time and place named in the notice, but neither Lund nor any one for defendant made an appearance. Neither defendant nor the appraiser Lund seems to have made any attempt at completing the appraisement after Lund departed for his Kansas City home, on January 20, 1893.

It will be noticed that the policies in suit differ from those policies which were under consideration in a number of cases to which counsel have cited the court, wherein the policies provide for appraisement without the formality or necessity of request therefor. In these cases the policies provided, in substance, that in all cases, unless the insurer and insured agreed as to values, loss, damage, etc., the matter should be submitted to appraisers, whose award should be final, etc. In such cases the courts well hold that no action whatever is necessary to make appraisement a requisite preliminary to suit, if the policy thus unconditionally forbade suit until award obtained, for the mere fact of failure to agree made the appraisement imperative. But in the case at bar, and many other cases cited by counsel, mere failure to agree does not make appraisement imperative. The company has chosen to declare, by the terms of these policies, that the appraisement provided for in the policies is only to be set in motion by the "written request of either party." The company might have provided differently, but it has not so done. And in this case, as was said by the supreme court of the United States in Hamilton v. Liverpool, London & Globe Ins. Co., 136 U. S. 255, 10 Sup. Ct. 945, with reference to the policy then under consideration,

and which, on this point, is identical with the policies in suit, the appraisal, when requested in writing, is distinctly made a condition precedent to the maintenance of any action. So, in Wallace v. Insurance Co., 41 Fed. 742, Circuit Judge McCrary, speaking of a policy identical on the point with the policies in suit, said:

"The condition did not absolutely require an arbitration. It only authorized either party to require it by a request in writing. The inference is reasonable that, if neither party requested it in writing, the usual remedies by suit were to remain. * * * If it was their purpose to require that in every case the damages were to be ascertained by arbitration, they could have said so in plain terms."

In the Wallace Case no arbitration was attempted. That far it differs from the case at bar. But the reasoning as to the effect of the clause, "at written request," is valuable here. Whatever arbitration (appraisement) was attempted in case at bar was had or attempted without any "written request of either party" therefor.

The attention of the court is called to the fact that the appraisement here attempted, and contemplated in the agreement, is a "joint" appraisement,—that is, of two companies, whose policies are not identical in the appraisement conditions therein contained,—and it is contended that a demand therefor, though in writing, would not be within the conditions of the policies sued on. Hamilton v. Home Ins. Co., 137 U. S. 370, 11 Sup. Ct. 133, in part, at least, illustrated the point here made. After referring to Hamilton v. Liverpool, London & Globe Ins. Co., supra, wherein it is declared that "the appraisement, when requested by either party, is distinctly made a condition precedent to the maintenance of any action," the court distinguishes, in part, the case (137 U. S. and 11 Sup. Ct.) from the Liverpool, London & Globe Ins. Co. Case, in that the policies differ as to the appraisers, in manner of selection and of exercising their duties, and the results differ accordingly in the two cases. Connecticut Fire Ins. Co. v. Hamilton, 8 C. C. A. 114, 59 Fed. 258, touches this point still more strongly. Hamilton held policies in some 12 different companies, all covering the property destroyed or damaged. The written demand on the insured to submit the loss, etc., to appraisers, was a joint demand made by the 12 companies. The Liverpool, London & Globe Ins. Co. Case, supra, is distinguished. In that case, after the insured failed to comply with the joint demand, the company made its separate written demand. In the Connecticut Fire Ins. Co. Case, there was no separate written demand by that company. Speaking of this joint written demand for appraisement, Judge Severens says:

"This was not a demand for appraisal by this insurance company, such as its policy gave it the right to make. It did not acquire its right, in any respect, from the policies of the other companies; and it had no legal concern with their disputes, or the mode to be adopted for their settlement, and had no obligation to champion their cause, or mix its controversy with theirs. The insured was not bound to accept such proposition for determining the value and damage as was demanded of him by the companies,—this among them. If he had done so, it would have been an arbitration outside and independent of this policy, standing on the general ground of common-law arbitrations."

In this case just quoted from, there was disagreement as to other points between the judges constituting the circuit court of appeals

for the Sixth circuit at that time, and separate opinions were filed in the case. Judge Swan—having stated, as one of the points in issue, that the insurance companies claimed the joint demand constituted a demand by the Connecticut Company, under its policy, for the appraisal of the insured property—quotes the language of Judge Severens, above given, and adds, "With this I entirely agree." Circuit Judge Taft, in his separate opinion (page 114, 8 C. C. A., and page 272, 59 Fed.), with reference to the opinions filed by Judges Severens and Swan, says:

"Both these judges concur with the views of Judge Sage, in the court below, that the demand of the twelve companies, in what is called the 'joint' correspondence, was for a single appraisal by one board of appraisers, and that this demand was not within the requirements of defendant's policy. * * * It seems clear, therefore, * * * the joint demand for appraisal or arbitration, of the character described, * * * was not a demand for an appraisal secured to the defendant company under its policy."

In Hamilton v. Phoenix Ins. Co., 9 C. C. A. 530, 61 Fed. 379, the circuit court of appeals for the Sixth circuit again had occasion to consider the point involved in the extracts just given. At this hearing, Circuit Judges Taft and Lurton and District Judge Ricks composed the court. The policy under consideration was one of the 12 policies to which reference was made in the foregoing extracts. Judge Taft, in delivering the opinion of the court (page 530, 9 C. C. A., and page 385, 61 Fed.), says:

"In the case of Connecticut Fire Ins. Co. v. Hamilton, 8 C. C. A. 114, 59 Fed. 258, it was held by this court—all the judges concurring—that the joint demand for a joint appraisal by the twelve insurance companies contained in the joint correspondence was not within the terms of the policy of the Connecticut Fire Ins. Company providing for an appraisal, for the reason that such policy stipulated for a separate appraisal. This holding is equally applicable to the case at bar."

And he quotes at length the extract above given from the opinion of Judge Severens, as a part of the holding of the case then under consideration. But, in the case now on trial, not only—if we assume the joint agreement for appraisement was the result of any demand—must there have been a joint demand for appraisement, but the property described in the appraisement agreement as to be appraised includes property which is not included in or covered by either of the policies issued by defendant, and which are herein pressed. Certainly, as to such property not insured by defendant, it has no right to appraisers, and (using the oft-repeated and oft-approved language of Judge Severens):

"It [defendant] did not acquire its rights, in any respect, from the policies of the other company, and it had no legal concern with their settlement, and no obligation to champion their cause, or to mix its controversy with theirs. * * * If plaintiff had done so [accepted the proposal for joint appraisement], it would have been an arbitration aside and independent of the policy, standing on the general ground of common-law arbitration."

And as to such an appraisement the defendant cannot claim its "condition precedent" clause to apply, for its policies specially limit the prohibition of right to sue till award made to "an award * * * obtained, fixing the amount of such claim in the manner above provided," and not to an award pursuant to or under a "common-

law arbitration." In other words, when defendant elected to take an appraisement which was not such "as its policy gave it a right to demand and insist upon," it waived whatever right it might otherwise have had to insist on the appraisement provided for in the policies it had issued to the plaintiff, and which it had inserted therein as condition precedent to suit thereon, and it proceeded (again using the language so often approved in the extracts above given) to "stand on the general ground of common-law arbitrations."

In Adams v. Insurance Co., 85 Iowa, 6, 51 N. W. 1149, the supreme court of Iowa were considering the defense therein set up,—that arbitration and award had been had, and that the plaintiff was limited thereto in his right to recover. In that case the agreement to appraise did not follow the terms of the policy. Having found that such an agreement was a "material and fatal variance from the terms of the policy," the court declares, "The submission and award pleaded, not being in accord with the terms of the policy, are no defense to the action." It should, perhaps, be stated, as the same was stated by the court, that the defendant in that case did not plead the award as the result of a common-law arbitration, but pleaded it, and relied on it, as being the result of an arbitration which was binding under the policy in suit.

The policy in case at bar contains the following provisions: "And it is further expressly covenanted by the parties hereto that no officer, agent, or representative of the company shall be held to have waived any of the terms or conditions of this policy unless such waiver shall be indorsed hereon in writing." And defendant claims that there can be no waiver here, since no indorsement appears on either of the policies in suit. The answer to this must be that such provision is waived herein by the acts of the defendant, under the facts proven. The cases are numerous which justify this holding. In Insurance Co. v. Bowdre, 67 Miss. 620, 7 South. 596, the policy contained provisions to the same effect as that herein pleaded, but with much more specific statements of them, and with a fullness which apparently did not permit any waiver or modification to escape the terms used. The court declares that "the contention of appellant's counsel that there can be no parol waiver, by reason of the provisions in the policy that waiver shall only be by writing indorsed on the policy, is not maintainable." And the court approvingly quote Insurance Ass'n v. Matthews, 65 Miss. 301, 4 South. 62, to the effect that such waiver may be made "despite such provision in the policy requiring it to be done in writing, and especially that such stipulation applies only to those conditions and provisions which relate to the formation and continuance of the contract of insurance, and are essential to its binding force while it is running, and does not apply to conditions which are to be performed after loss has occurred." Referring to stipulations in a policy which declare that "no agent of the company is authorized to change its terms or conditions, and they shall not be waived, except in writing indorsed on the policy," the supreme court of North Carolina, in a well-considered and elaborate opinion, dealing especially with this point, and quoting from and reviewing a large number of cases, affirm in Dibbrell v. Insurance Co., 110 N. C.

193, 14 S. E. 783, that such a stipulation "does not apply to conditions to be performed after the loss is incurred." And the citations by the court include cases from the highest courts of Indiana, New Jersey, California, Maine, Pennsylvania, Minnesota, and its own state. I do not deem it necessary to multiply citations on this point, for the defendant expressly adopts and ratifies the acts of its adjuster when it sets up these acts, and the result thereof, as a defense in this action.

The Iowa statute (section 1734, McClain's Code) presents matter bearing on the point under consideration. Under that section the question is pertinent whether, as to the building described in the agreement to appraise, such agreement is of any validity, as against plaintiff, and whether the same is not in contravention of the express statute. That section, so far as it affects this question, is as follows:

"In any suit or action brought in any court in this state, on any policy of insurance, against the company issuing the policy sued on, in case of the loss of any building so insured, the amount stated in the policy shall be received as prima facie evidence of the insurable value of the property at the date of the policy; provided nothing herein shall be construed to prevent the insurance company from showing the actual value at the date of the policy and any depreciation in the value thereof before the loss occurred; * * * and in order to maintain his action on the policy, it shall only be necessary for the insured to prove the loss of the building insured, and that he has given the company notice in writing of such loss, accompanied with an affidavit stating the facts as to how the loss occurred, so far as they are within his knowledge, and the extent of the loss; * * * all the provisions of this chapter shall apply to and govern all contracts and policies of insurance contemplated in this chapter, anything in the policy or contract to the contrary notwithstanding."

This section has repeatedly been under consideration by the supreme court of Iowa, one of the latest cases being Green v. Insurance Co., 84 Iowa, 135, 50 N. W. 558. The court (page 136, 84 Iowa, and page 559, 50 N. W.) state that "both sides of the case recognize the fact that whether there was a waiver of the provision of the statute and the condition of the policy requiring proof of loss by affidavit, as required by the statute, is the only question in the case." And, having considered the facts presented, the court declare that the company waived formal compliance with the statutory provision providing for "notice in writing of such loss, accompanied by an affidavit," and thus bringing the statute closely in line with the present case. While it is not necessary to decide the point above suggested, in this case, there is much ground for the contention by plaintiff that an appraisement agreement, as in the present case, relating exclusively to value, etc., of buildings, could not, because of the terms of this statute, be used, in this state, to prevent his bringing suit on policies herein.

From the matters above considered, and the conclusions reached, it must necessarily follow that the defense is not sustained that this action cannot be maintained because of the "condition precedent" clause contained in the policies sued on, and, as to this defense, I find against defendant.

But what force or effect, as to plaintiff's right to sue herein, or to recover judgment, have the pending appraisement proceed-

ings? Defendant claims that this action is premature, with such agreement proceedings pending, and no award obtained as yet. If, as hereinbefore decided, the agreement for an appraisement, as signed in this case, does not provide for an appraisement according to the terms of the policy, but for a common-law arbitration, then it is merely a collateral and independent agreement, the breach of which, however much it might support a separate action, cannot be pleaded in bar to an action on the principal contract. Insurance Co. v. Alvord, 9 C. C. A. 623, 61 Fed. 752; Hamilton v. Insurance Co., 137 U. S. 370, 11 Sup. Ct. 133; Crossley v. Insurance Co., 27 Fed. 30; Seward v. City of Rochester, 109 N. Y. 164, 16 N. E. 348. The defense that this action was brought prematurely, because the appraisement proceedings had not been terminated by an award, must fall. The appraisement proceedings were commenced, and the appraisement proceeded far enough to enable the appraisers to see that they could not agree. Thereupon Lund went to his home, in Western Missouri, and returned some months after, to remain but a few hours, and ascertain that he and his associate appraiser were unable to agree on the selection of an umpire, when he again returned to his home. Since that time no effort has been made, either by himself or the company, to effect an award. If plaintiff had reason to believe that the appraisement was practically abandoned by defendant, surely his right of action remained to him. The evidence shows that at different times in December, 1892, and in January, 1893, plaintiff was appealing, by letter, for completion of the appraisement. The appraiser Fischer wrote to Lund in the same strain. One letter from Lund, in November, 1892, and his brief visit in January, 1893, appear to be the entire fruitage of these efforts for the procurement of an award. The petition herein was filed on January 28, 1893. The original notice was placed in hands of the county sheriff on January 23, 1893, and served on defendant on same day. So that whether section 3737, McClain's Code, providing that delivery of notice to sheriff, with intent to have the same served immediately, is a commencement of the action, here applies, or whether the actual filing of the petition is the commencement of the action, this action was not commenced until after Lund had made his final visit to Louisa county, and had returned to his home, in Missouri. In Hamilton v. Liverpool, London & Globe Ins. Co., 136 U. S. 242, 10 Sup. Ct. 945, wherein the plaintiff is adjudged not entitled to recover, because he failed to arbitrate after due request to do so, the court add:

"If plaintiff had joined in the appointment of appraisers, and they had acted unlawfully, or had not acted at all, a different question would have been presented."

So in Connecticut Fire Ins. Co. v. Hamilton, 8 C. C. A. 114, 59 Fed. 265, when considering the duty of the insured (where the policy made arbitration a condition precedent to suit), in his petition, to aver an award obtained, or give some proper excuse for not having obtained it, the court say:

· "That duty would be discharged by a fair effort to obtain the appraisal, even though the insured failed in consequence of the fraud or misconduct of the other party, the impracticability of organizing the board, or the proceedings becoming abortive by reason of some radical error of the appraisers, or by any other obstacle preventing him, for which he is not at fault."

What could plaintiff have done, beyond that shown in the evidence, to procure an award?

In Gere v. Insurance Co., 67 Iowa, 272, 23 N. W. 137, and 25 N. W. 159, the supreme court of Iowa were considering a case wherein the defendant claimed arbitration as a precedent to suit, and the effect of a pending arbitration on the pending suit:

"Its contention is that an arbitration is a condition precedent to a right to sue. But it is to be observed that it is not expressly so provided, nor, indeed, is an arbitration to be had at all, except one of the parties requests it. The agreement, then, to arbitrate the amount of the loss on the written request of either party was, we think, nothing more than a mode of providing what should be deemed conclusive evidence of one of the facts. Whether the written request was served too late or not, we need not determine. If it was not too late, the plaintiff, at the time the answer was filed, might still be allowed to choose an arbitrator, and procure her evidence in the mode agreed."

In case at bar, plaintiff, before the trial was had, had attempted to have the appraisement completed. But, though the notice therefor was served on defendant by serving it on the adjuster who signed for defendant the appraisement agreement, as well as served on the appraiser whom defendant had chosen, neither defendant's adjuster, nor any one else for it, nor its appraiser, appeared, although plaintiff and his appraiser were present. This notice was served April 28, 1894. The time named for the meeting was May 22, 1894, and the place named was the office of the local agent of defendant in Louisa county, Iowa, who had signed and delivered to plaintiff the policies in suit. Plaintiff's conclusion, at the time of bringing this suit, that defendant had abandoned the appraisement, and did not intend to press it further to a conclusion, seems to be fully warranted by subsequent events. The evidence establishes plaintiff's good faith and diligence in this matter. And, without attempting to decide whether the Iowa statute above quoted applies, I find that defendant was justified in bringing this action at the time it was brought, and that judgment herein ought not to be suspended until award, if such has been ever possible thereon, be reached. What has heretofore been said, perhaps, disposes of the defense that this action was prematurely brought, to wit, within 90 days from time proofs were received by defendant, and waiver thereon had. That defense is not sustained by the evidence.

The second policy in suit includes insurance on personal property to amount of $800. Whether or not the policy provisions have been sustained, as conditions precedent to suit, plaintiff, under the evidence, would have been entitled to judgment for the full amount of insurance on this personal property. I also find that the plaintiff is entitled to judgment for the full amount of insurance on the dwelling house which is included in both policies. Let judgment be entered in favor of plaintiff for the sum of $3,800.

with interest at 5 per cent. from October 4, 1892, and costs of suit. Clerk will compute the amount of damages herein allowed. To which defendant duly excepts, and is given 90 days to prepare, have signed, and file his bill of exceptions.